[No. S120677. June 23, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH KENNETH SORDEN, Defendant and Appellant.

---

## COUNSEL

Kathleen Kahn and Richard Such, under appointments by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit and Jill M. Thayer, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**BROWN, J.**—A registered sex offender must, within five working days of the offender's birthday, update his or her registration. (Pen. Code, § 290, subd. (a)(1)(D).)[1] Willful failure to update one's registration is a felony. (§ 290, subd. (g)(2).) In *People v. Barker* (2004) 34 Cal.4th 345 [18 Cal.Rptr.3d 260, 96 P.3d 507] (*Barker*), we held the willfulness element of the offense may not be negated by evidence the defendant "just forgot" to register. (*Id.* at p. 358.) We reserved judgment "as to whether forgetfulness resulting from, for example, an *acute psychological condition*, or a *chronic deficit of memory or intelligence* might negate the willfulness required for a section 290 violation." (*Ibid.*) This case presents the question whether forgetting to update one's registration because of *severe depression* may negate the section 290 willfulness requirement.

The Attorney General contends willful failure to update one's registration as a sex offender is a general intent crime, and, therefore, evidence that defendant forgot to update his registration due to depression was inadmissible

---

[1] Subsequent statutory references are to the Penal Code.

under section 28, subdivision (a).[2] Defendant responds that the due process right to present a defense trumps section 28 in the circumstances of this case.

We need not address section 28 or its constitutionality to resolve this case. All we need do is construe section 290. We have been mindful of due process considerations in interpreting section 290. In *People v. Garcia* (2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590] (*Garcia*), we held that the willfulness element of a section 290 violation requires *actual knowledge* of the duty to register. We now hold that the willfulness element of the offense may be negated by evidence that an involuntary condition—physical or mental, temporary or permanent—deprived a defendant of actual knowledge of his or her duty to register. Only the most disabling of conditions, we emphasize, would qualify under the standard we announce today. Severe Alzheimer's disease is one example that comes to mind; general amnesia induced by severe trauma is another. Defendant's claimed depression clearly did not satisfy this standard. Defendant knew of his obligation to register and, had he taken it to heart, he could have managed to discharge it.

### Factual and Procedural Background

Defendant is a registered sex offender, and so must update his registration within five working days of his birthday. (§ 290, subd. (a)(1)(D).) Defendant's birthday is December 6; in 2001, he did not update his registration until December 22. He voluntarily came to the Pacifica police station to do so. According to the officer who interviewed him, defendant said "he had simply forgotten to." Defendant added he had "gotten up that morning, realized he hadn't registered and that he needed to do so."

While defendant claims to have forgotten to register on this occasion, there is no question but that he was ordinarily well aware of his obligation. He had complied with it on numerous occasions in the past. He was, he testified, "stunned" he had forgotten to update his registration this time. "It was something I don't usually forget at all. I'm constantly reminded of it every day." Indeed, defendant asserted he would "never forget" the day he was first required to register as a sex offender.

The indelibility of that day for defendant is apparently attributable to the fact that this lifetime obligation has never ceased to chafe him. In 1988, in

---

[2] Section 28, subdivision (a) provides: "Evidence of mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

signing an acknowledgment that he had been notified of the sex offender registration requirements, he wrote he was doing so "under duress." In 1999, in initialing the registration form's 16 statements advising him of his various obligations, including his obligation to update his registration "within 5 working days of my birthday," defendant complained: "Registering is having a negative effect on me. It's not fair to be classified as such a sex freak for an isolated incident [his conviction for rape in 1983]." Defendant renewed this complaint in signing the registration form some months before this incident.

At trial, defendant testified he forgot to update his registration because he was "in a pretty depressed state due to many issues." His counsel asked him, "What were those issues?" However, the prosecutor's objection on grounds of relevancy was sustained. Earlier, the court had foreclosed this line of inquiry by granting the prosecutor's motion in limine; the ground of the ruling was that failure to update one's sex offender registration is a general intent crime.

According to defendant's proffers of evidence, friends of his were prepared to testify he was depressed because (1) his mother had cancer; (2) the mother of his son, in order to terminate his visitation rights, had falsely accused him of being abusive to the boy; (3) he had broken up with his girlfriend; and (4) his dog had died. In his argument opposing the motion in limine, defense counsel said the testimony of defendant's friends, as to "what he was going through at the time," would lay the foundation for an expert witness who would testify (1) that defendant was "showing signs of clinical depression," and (2) how depression affects "concentration and memory."

Finding defendant guilty of willfully failing to update his registration (§ 290, subd. (g)(2)), the court suspended imposition of sentence and granted defendant probation for three years, subject to, among others, the condition that he pay a restitution fine of $200 (§ 1202.4), and that he serve 90 days in the county jail with credit for time served.

The Court of Appeal reversed. "We agree with [defendant] that genuinely forgetting to register negates the element of willfulness required in section 290, and therefore, the trial court erred in refusing to admit testimony that [defendant] failed to remember to register."

We reverse the judgment of the Court of Appeal, and we remand the cause for further proceedings consistent with the views expressed herein.

DISCUSSION

■ Again, in *Garcia, supra*, 25 Cal.4th 744, we held that a violation of section 290 requires actual knowledge of the duty to register. "In a case like this, involving a *failure* to act, we believe section 290 requires the defendant to actually know of the duty to act. Both today and under the version applicable to defendant, a sex offender is guilty of a felony only if he 'willfully violates' the registration or notification provisions of section 290. (§ 290, former subd. (g)(3), as amended by Stats. 1994, ch. 867, § 2.7, p. 4393; § 290, present subd. (g)(3).) The word 'willfully' implies a 'purpose or willingness' to make the omission. (§ 7.) Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed. As stated in *People v. Honig* (1996) 48 Cal.App.4th 289, 334 [55 Cal.Rptr.2d 555], 'the term "willfully" . . . imports a requirement that "the person knows what he is doing." [Citation.] Consistent with that requirement, and in appropriate cases, knowledge has been held to be a concomitant of willfulness. [Fn. omitted.]' Accordingly, a violation of section 290 requires actual knowledge of the duty to register. A jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement." (*Garcia*, at p. 752.)

■ We further held in *Garcia* that as construed to require actual knowledge of one's duty to register, section 290 satisfies due process. "The actual knowledge test satisfies constitutional requirements. The high court has held that due process principles forbid applying the proscriptions of a registration act to one having 'no actual knowledge of his duty to register, and where no showing is made of the probability of such knowledge.' (*Lambert v. California* (1957) 355 U.S. 225, 227 [2 L.Ed.2d 228, 78 S.Ct. 240] (*Lambert*).) . . . [¶] Assuming *Lambert* controls here (but see *U.S. v. Kafka* (9th Cir. 2000) 222 F.3d 1129, 1132–1133 [*Lambert* does not apply where the circumstances, including any notice expressly or impliedly provided by the criminal statute, should have alerted defendant to the registration requirement]; *U.S. v. Meade* (1st Cir. 1999) 175 F.3d 215, 226 [same]), it merely established that a defendant cannot be convicted of violating a registration act without at least 'proof of the probability of' knowledge of the duty to register. (*Lambert, supra*, 355 U.S. at p. 229 [78 S.Ct at p. 243].) By making actual knowledge of the duty to register an element of a section 290 violation, we undoubtedly meet any due process limitations imposed by *Lambert*." (*Garcia, supra*, 25 Cal.4th at pp. 752–753.)

In *People v. Atkins* (2001) 25 Cal.4th 76 [104 Cal.Rptr.2d 738, 18 P.3d 660], we rejected the argument that exclusion of evidence, under section 22,[3] of the defendant's voluntary intoxication "violate[d] his due process rights by denying him the opportunity to prove he did not possess the required mental state (*Montana v. Egelhoff* (1996) 518 U.S. 37, 39–40, 56 [135 L.Ed.2d 361, 116 S.Ct. 2013].)" (*Atkins*, at p. 93.)

We recognize, of course, that depression, unlike drunkenness, is not a voluntary condition. And we realize a person may suffer from an involuntary condition so disabling as to rob him of knowledge of his registration obligations under section 290. Therefore, in order to avoid any due process problems, we hold that a defendant charged with violation of section 290 may present substantial evidence that, because of an involuntary condition— temporary or permanent, physical or mental—he lacked actual knowledge of his duty to register.

Defendant did not proffer such evidence. There is no question but that he knew of his duty to register. He simply claimed his depression made it more difficult for him to remember to register. However, life is difficult for everyone. As a society, we have become increasingly aware of how many of our fellow citizens must cope with significant physical and mental disabilities. But cope they do, as best they can, for cope they must. So, too, must defendant and other sex offenders learn to cope by taking the necessary measures to remind themselves to discharge their legally mandated registration requirements. It is simply not enough for a defendant to assert a selective impairment that conveniently affects his memory as to registering, but otherwise leaves him largely functional.

The public policy underlying section 290 supports this conclusion. In *Barker, supra,* 34 Cal.4th 345, we explained that countenancing the excuse that a defendant *just forgot* to register " 'would effectively "eviscerate" ' " section 290. (*Barker*, at p. 358.)

" 'The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit

---

[3] Section 22 provides in relevant part: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.

"(b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought."

similar offenses in the future. [Citation.]' (*Barrows v. Municipal Court* (1970) 1 Cal.3d 821, 825–826 [83 Cal.Rptr. 819, 464 P.2d 483]; accord, *Wright* [*v. Superior Court* (1997)] 15 Cal.4th [521,] 527 [63 Cal.Rptr.2d 322, 936 P.2d 101]; *People v. McClellan* (1993) 6 Cal.4th 367, 376, fn. 7 [24 Cal.Rptr.2d 739, 862 P.2d 739].) 'Plainly, the Legislature perceives that sex offenders pose a "continuing threat to society" [citation] and require constant vigilance. [Citation.]' (*Wright*, at p. 527.)

" 'To this end, a convicted sex offender must register not only on conviction, but whenever "coming into any city, county, or city and county in which he or she temporarily resides or is domiciled . . . ." (§ 290, subd. (a).) Supplemental address change information helps law enforcement agencies keep track of sex offenders who move within the same city or county or are transient. In large cities such as Los Angeles or huge counties like San Bernardino, where offenders can easily relocate without reregistering, section 290[, subdivision (f)] seeks to prevent them from disappearing from the rolls. Ensuring offenders are "readily available for police surveillance" (*Barrows v. Municipal Court, supra,* 1 Cal.3d at p. 825) depends on timely change-of-address notification. Without it law enforcement efforts will be frustrated and the statutory purpose thwarted. The statute is thus regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts. *Compliance is essential to that objective; lack of compliance fatal.*' (*Wright, supra,* 15 Cal.4th at p. 527, italics added.)" (*Barker, supra,* 34 Cal.4th at p. 357.)

█ Just as it would effectively eviscerate the statute to permit sex offenders to escape the consequences of failing to register on the ground they simply forgot to do so (*Barker, supra,* 34 Cal.4th at p. 358), so, too, would it effectively eviscerate the statute to countenance as an excuse a condition that falls short of nullifying knowledge of one's registration obligations. As for defendant's claimed depression, according to one study, most convicted sex offenders have mood disorders, and nearly a quarter of them suffer from major depression.[4] Indeed, defendant claimed the very act of registering had a "negative effect" on him.

█ Finally, defendant contends it was for a jury, not the trial judge, to decide whether his depression deprived him of actual knowledge of his duty to register. We disagree. The question whether a defendant has proffered evidence sufficiently substantial to go to the jury under the standard we announce today is a question confided to the sound discretion of the trial court. For the reasons given, we find no abuse of discretion here.

---

[4] McElroy et al., *Psychiatric Features of 36 Men Convicted of Sexual Offenses* (June 1999) 60 J. Clinical Psychiatry 414, 417, table 2.

DISPOSITION

The judgment of the Court of Appeal is reversed and the cause remanded for further proceedings consistent with the views expressed herein.

George, C. J., Baxter, J., and Chin, J., concurred.

KENNARD, J., Concurring.—A person convicted of specified sex offenses must register with law enforcement officials and update the registration within five working days of the person's birthday; "willful" failure to comply is a felony. (Pen. Code, § 290.) In *People v. Barker* (2004) 34 Cal.4th 345 [18 Cal.Rptr.3d 260, 96 P.3d 507] (*Barker*), this court held that forgetting to update the registration constitutes willfully failing to register within the meaning of section 290. I dissented. I explained: "Forgetting cannot be willed; it is an unplanned malfunction of the conscious mind. For this reason, a person who intends to do something, but forgets to do it, has not *willfully* failed to do that thing." (*Barker, supra*, 34 Cal.4th at p. 366 (dis. opn. of Kennard, J.).)

Left open in *Barker* was the question whether "forgetfulness resulting from, for example, an *acute psychological condition*, or a *chronic deficit of memory or intelligence* might negate the willfulness required for a section 290 violation." (*Barker, supra*, 34 Cal.4th at p. 358, fn. omitted.) The majority's response today is that "the willfulness element of the offense may be negated by evidence that an involuntary condition—physical or mental, temporary or permanent—deprived a defendant of actual knowledge of his or her duty to register." (Maj. opn., *ante*, at p. 69.) The majority notes that "[o]nly the most disabling of conditions" would qualify under this standard; as examples, it cites "[s]evere Alzheimer's disease" and "general amnesia induced by severe trauma." (*Ibid.*)

Applying that definition to the facts of this case, the majority concludes that defendant's proffered evidence, which would have shown that he forgot to update his registration because he was suffering from depression, would not have demonstrated that he lacked *actual knowledge* of his duty to register, but would have shown only that he *forgot* to register. Thus, it holds, the trial court properly excluded this evidence. (Maj. opn., *ante*, at p. 73.)

As I understand the majority opinion, it draws a distinction between two groups of defendants suffering from a mental disease or disorder: (1) defendants who have "forgotten" the duty to register and cannot currently bring it to mind, but who still retain a subconscious knowledge such that, when reminded, they remember that they had a duty to register; and (2) defendants who, because of an involuntary physical or mental condition,

no longer have a subconscious memory of the duty to register and, when reminded of that duty, would not remember it but must learn it anew. It is a dauntingly difficult distinction to apply, and one that depends upon concepts of retained subconscious memory that may or may not be scientifically valid. But, as the majority explains, this line must nevertheless be drawn "to avoid any due process problems." (Maj. opn., *ante*, at p. 72.)

I adhere to the view that the majority was wrong in *Barker, supra*, 34 Cal.4th 345, for equating forgetfulness with willfulness. Had my view prevailed, there would have been no need to draw the difficult distinction I just discussed, because neither of the two groups of defendants mentioned would come within the ambit of Penal Code section 290. But the majority's holding in *Barker* is now the law, and the distinction that the majority in this case has drawn may be the best way in which to reconcile *Barker*'s holding with the due process concerns noted by the majority.

**WERDEGAR, J.,** Concurring and Dissenting.—This case, as the majority states, presents the question whether forgetting to update one's registration "because of *severe depression*" may negate the Penal Code section 290 (section 290) willfulness requirement. (Maj. opn., *ante*, at p. 68.) Without directly answering the stated question, the majority holds that "the willfulness element of the offense [of failure to register] may be negated by evidence that an involuntary condition—physical or mental, temporary or permanent— deprived a defendant of actual knowledge of his or her duty to register." (*Id.* at p. 69.) I agree. The majority further holds that "[o]nly the most disabling of conditions . . . would qualify under the standard [it] announce[s] today." (*Ibid.*) As an abstract principle, I agree. Certainly the condition must be sufficiently disabling so as to deprive the afflicted individual of his or her awareness or knowledge of the duty to register.

The majority, however, goes further. In an ipse dixit resolving the factual issue defendant never had the opportunity in the trial court to address, the majority declares: "Defendant's claimed depression clearly did not satisfy this standard. Defendant *knew of his obligation to register and, had he taken it to heart, he could have managed to discharge it.*" (Maj. opn., *ante*, at p. 69, italics added.) It is here I part company with the majority. I disagree that this court, in the circumstances of this case, where the trial court precluded defendant from presenting his proffered evidence of severe depression, can *as a matter of law* declare that defendant "knew" of his obligation to register. Rather, I agree with the Court of Appeal that the trial court abused its discretion in refusing to consider defendant's proffer of evidence that he

suffered from a clinical depression[1] that caused him to fail to remember to register. Although, as the majority states, the question whether a defendant has proffered evidence sufficiently substantial to go to the jury under the standard the court announces today is a question confided to the sound discretion of the trial court (maj. opn., *ante*, at p. 73), here, contrary to the majority, the trial court did not exercise an informed discretion, evidently rejecting defendant's proffer, instead, in the mistaken belief that evidence of mental impairment was legally irrelevant to the question of a defendant's knowledge of the duty to register.

# I

Section 290 requires persons convicted of enumerated sex crimes to register with appropriate law enforcement authorities. Subdivision (g)(2) of section 290 provides in pertinent part that "any person who is required to register under this section based on a felony conviction . . . who *willfully* violates any requirement of this section . . . is guilty of a felony . . . ." (Italics added.) Almost 50 years ago, the United States Supreme Court held that one's constitutional right to due process of law requires, at a minimum, that a conviction for violating a criminal registration law include a showing of "*actual knowledge* of the duty to register or proof of the probability of such knowledge." (*Lambert v. California* (1958) 355 U.S. 225, 229 [2 L.Ed.2d 228, 78 S.Ct. 240], italics added.)

We addressed the meaning of the term "willfully," as used in section 290, in *People v. Garcia* (2001) 25 Cal.4th 744 [107 Cal.Rptr.2d 355, 23 P.3d 590] (*Garcia*). There we held that, in cases charging a violation of section 290, the jury must be instructed the word "willfully" requires that the accused have

---

[1] "Major depression is the most common of the mood disorders. The key diagnostic criterion for major depressive *disorder* is the presence of a major depressive *episode*.

"There are nine symptoms that define a major depressive episode. Of the nine, at least five must have been present during a 2-week period. They must represent a change from previous functioning and they must cause significant impairment in daily functioning. At least one of the five symptoms must be either the first or the second symptom in the following list:

"1. Depressed mood most of the day, nearly every day.

"2. Reduced interest or pleasure in all or almost all activities.

"3. Significant weight loss or weight gain, or a significant decrease or increase in appetite.

"4. Trouble sleeping or sleeping too much.

"5. Psychomotor agitation or retardation.

"6. Fatigue or loss of energy.

"7. Feeling worthless or guilty in an excessive or inappropriate manner.

"8. Problems in thinking, concentrating, or making decisions.

"9. Recurrent thoughts of death, suicidal ideation, specific suicidal plan, or a suicide attempt." (1 Encyclopedia of Mental Health (Academic Press 1998) pp. 735–736.)

had *actual knowledge* of his duty to register. Subsequently, in *People v. Barker* (2004) 34 Cal.4th 345 [18 Cal.Rptr.3d 260, 96 P.3d 507] (*Barker*), we held that merely forgetting to register was not a defense to the crime of willfully failing to register. *Barker* specifically reserved judgment, however, on whether "an acute psychological condition, or a chronic deficit of memory or intelligence might negate the willfulness required for a section 290 violation." (*Id.* at p. 358, italics omitted.)

The law requires that persons convicted of certain enumerated sex crimes be informed, upon release from confinement, of their duty to register (§ 290, subd. (b)(1)) and sign a form indicating they have been so informed (*ibid.*). At the outset, then, we assume all persons required to register had, at least at one time, the knowledge of their duty to do so. It is not, however, this preliminary knowledge that is relevant here. The crime defined in section 290 is the *willful failure* to register or reregister at any one of the numerous times set out in the statute. "The word 'willfully' implies a 'purpose or willingness' to make the omission. [Citation.] Logically one cannot purposefully fail to perform an act without knowing what act is required to be performed." (*Garcia, supra*, 25 Cal.4th at p. 752, quoted with approval in *Barker, supra*, 34 Cal.4th at p. 351.) It is thus the offender's knowledge or awareness of the duty *at the time he or she fails to register* that is relevant.

Although "just forgetting" one's duty to register does not negate such knowledge (*Barker, supra*, 34 Cal.4th at p. 361), the majority accepts the proposition that certain psychological conditions can render a person unable to recall the legal duty to register. "Severe Alzheimer's disease is one example that comes to mind; general amnesia induced by severe trauma is another." (Maj. opn., *ante*, at p. 69.) Because sex offenders are told on release from prison of their legal duty to register, a trier of fact may infer that, in the normal case, when an offender fails to register, he or she did so with knowledge of the duty, rendering the offender's omission a willful one. "A jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement." (*Garcia, supra*, 25 Cal.4th at p. 752.) Evidence of a qualifying mental illness is thus relevant to rebut the inference of knowledge.

## II

Defendant proposed to present both lay and expert evidence that he suffered from severe depression. Thus, he offered the testimony of lay witnesses who would have testified that he was a friendly, hard-working, "happy-go-lucky" person who was involved in his community. In the months

leading up to his failure to register in December 2001, however, he appeared depressed, unfocused and withdrawn. He had been financially unable to retain possession of his home of several years and had moved first into a friend's garage and then to a new residence in Pacifica. His mother, with whom he was very close, had been battling cancer for the previous two years and had recently been diagnosed with a rapidly spreading form of the disease. During this time, defendant had been flying back and forth to New York to be with his mother. During this same period, defendant's girlfriend decided to end their relationship, and the mother of his son was being uncooperative in permitting visitation. In addition, defendant's constant companion for the previous 14 years, his pet German shepherd, Ruby, died in November 2001. A friend would have testified that the dog's death had a "devastating effect" on defendant. More than one witness would have testified that, during this period, defendant lost a lot of weight and appeared forgetful.

In opposing the prosecution's motion in limine to exclude his proffered evidence, defense counsel asserted he would call an expert witness (Dr. Weiner) who, if permitted, would testify that defendant showed signs of clinical depression and that such depression affected defendant's concentration and memory.

In finding defendant's proffered evidence was properly excluded, the majority dismisses the seriousness of his potential illness, characterizing his problem as one merely of lack of effort. For example, the majority asserts that defendant "simply claimed his depression made it more difficult for him to remember to register." (See maj. opn., *ante,* at p. 72.) Defendant and others with mental disabilities, says the majority, must cope "as best they can." (*Ibid.*) The majority thus implies that unlike persons suffering from amnesia or Alzheimer's disease who cannot remember their legal duty to register no matter how hard they try, one suffering a major depressive episode can remember if he or she simply tries harder to do so. The majority cites no authority in support of this suggestion. Indeed, the opposite appears to be true. According to the National Institute of Mental Health, "[a] depressive disorder is an illness that involves the body, mood, and thoughts. It affects the way a person eats and sleeps, the way one feels about oneself, and the way one thinks about things. A depressive disorder is not the same as a passing blue mood. It is not a sign of personal weakness or a condition that can be willed or wished away. *People with a depressive illness cannot merely 'pull themselves together' and get better.* Without treatment, symptoms can last for weeks, months, or years." (<http://www.nimh.nih.gov/publicat/depression.cfm> [as of June 23, 2005], italics added.)

The prevailing diagnostic tool for mental disorders explains that "[m]any individuals [suffering from a major depressive episode] report impaired ability to think, concentrate, or make decisions. [Citation.] They may appear easily distracted or *complain of memory difficulties.*" (Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) p. 350 (DSM-IV-TR), italics added.) Defendant's proffered evidence of his depressive mood and unfocused affect, his sudden weight loss and diminution of energy were all consistent with known symptoms of depression. (1 Encyclopedia of Mental Health, *supra,* at pp. 735–736; DSM-IV-TR, *supra,* at p. 356.) That he experienced a series of major life stressors during the period leading up to his failure to register is also consistent with his having endured a major depressive episode.[2]

We need not now conclude the trier of fact would or would not have been convinced by defendant's proffered evidence. The question before us is one of admissibility. On its face, the evidence shows defendant experienced more than a "passing blue mood," that he in fact suffered from serious depression at the time he failed to register, and that sufferers of such depressive episodes often experience significant memory deficits. I conclude this evidence, lay evidence that in turn supported an expert medical opinion, was relevant to the question of whether defendant's failure to register was a willful omission as required by section 290.

## III

The trial proceedings in this case took place on July 22, 2002, well before our decision in *Barker, supra,* 34 Cal.4th 345. Although the trial court anticipated our *Barker* decision by concluding that merely forgetting one's duty to register was not a defense, the lower court could not have anticipated that we would limit our holding in *Barker* and expressly except "acute psychological condition[s]" affecting memory. (*Id.* at p. 358, italics omitted.) Instead, the trial court evidently excluded defendant's proposed evidence of his depression on the ground the evidence was not relevant. Because I find such evidence was relevant, I would remand this case to the trial court to enable it to reassess the evidence's admissibility under the proper standard. If, in fact, defendant suffered from a serious and diagnosable depressive disorder affecting his memory, his failure to register in this case may not have been willful as required by section 290.

---

[2] "External stressors and significant life changes, such as chronic medical problems, death of a loved one, divorce or estrangement, miscarriage, or loss of a job, also can result in a form of depression known as adjustment disorder. Although periods of adjustment disorder usually resolve themselves, occasionally they may evolve into a major depressive disorder." (Health & Wellness Resource Center, at http://infotrac.galegroup.com [as of June 23, 2005].)

Defendant, of course, has a constitutional right to present relevant evidence in his defense. To the extent, therefore, the majority declines to permit this defendant to present evidence he suffered from a serious depressive disorder that negated his knowledge of the duty to register, I dissent.

Moreno, J., concurred.

Appellant's petition for a rehearing was denied July 27, 2005. Werdegar, J., was of the opinion that the petition should be granted.