[No. E046719. Fourth Dist., Div. Two. Dec. 21, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW NEIL BEJARANO, Defendant and Appellant.

584

COUNSEL

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez, Janet E. Neeley and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RAMIREZ, P. J.**—A jury convicted defendant, Andrew Neil Bejarano, of failing to comply with his obligation to register annually as a convicted sex offender (Pen. Code, § 290.012).[1] In bifurcated proceedings, he admitted having suffered a prior conviction for which he served a prison term (§ 667.5, subd. (b)). He was sentenced to prison for two years four months, and appeals, claiming evidence was erroneously excluded, the jury was misinstructed, defense counsel at trial was incompetent and sentencing error occurred. We reject his contentions and affirm.

FACTS

Defendant, as a convicted sex offender, had a duty to register within five days of his birthday each year. He fulfilled his duty 17 times, beginning in 1989 and ending when he moved to Moreno Valley[2] in April 2006, and he did not register on his birthdays during this 1989 to 2006 period only when he was incarcerated on other convictions. However, he failed to register within five days of his birthday in July 2006. On October 17, 2006, he came to the sheriff's office and filled out a request for an appointment to register. An appointment on October 24, 2006, was made for him, but he did not keep it. That same day, he was arrested for failure to register.

Defendant testified at trial that he found having to register unpleasant, but he knew he had a duty to register within five days of his birthday on July 18, 2006. However, he said that in February 2006, he found out that his father, with whom he was close, was very ill with liver sclerosis. Defendant claimed this news put him into a state of depression that grew as he watched his father deteriorate and finally die on June 21, 2006. During this time, he lost his job because he could not perform it properly.[3] However, he managed to register when he moved in April 2006. The depression continued after his father's death as defendant isolated himself from his family and his relationship with his fiancée suffered.[4] The medication he took for the depression did not affect him. At some point, which he did not specify, after his medication

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] He was also required to register when he changed residences.

[3] He testified that he got a new job plastering pools one week before his father's death, which he also lost within a short period of time.

[4] Defendant testified that he started sleeping a lot and he was not eating much after his father died, but he did not state that this was occurring around his July 2006 birthday. Although, as stated, he testified that after his father died he cut himself off from his family, no longer enjoyed his relationship with his fiancée as he had before and stayed in his room with the lights off, again, he did not testify that this occurred around his birthday. He testified that he lost his job before his father died but he had a job at the time of his father's death and was feeding and dressing himself then.

ran out, he began drinking. He knew he had to register within five days of his July 18, 2006 birthday, but he was severely depressed and just didn't care about life. On October 17, 2006, he drove himself to the sheriff's office and made an appointment to register because he knew it was his obligation to do so. His home was called with the time for the October 24 appointment, and defendant found out about it that morning. Defendant did not appear at the appointment because it was· "an inconvenience." He called after the sheriff's office closed on that date and left a message, but deputies came to his home and arrested him. He was not surprised to see them. He said it was in the back of his mind all along that he had to register and it was not like he completely forgot to do so.

### 1. *Limitation on Forensic Psychologist's Testimony*

A forensic psychologist who examined defendant (and his fiancée) for about an hour and a half 18 months after the crime testified that defendant was suffering from a severe depressive disorder at the time of the crime. She went on to opine that after his father's death in late June 2006, defendant was so disabled by his depression that he made wrong decisions. She said that when he lost his job shortly after his father's death, he "collapsed" and was so disabled that he did not apply for unemployment benefits.[5] She said he drank every day and passed out.[6] She added that the degree of disability defendant and his fiancée reported that he experienced was not common and was more severe than one would anticipate due to a loss. She attributed defendant's reporting to her the wrong date of his father's death on the confusion and inability to maintain an alert, focused attention that people in defendant's state experience and that his misreporting demonstrated that he was disabled and not functioning adequately and appropriately.[7] She repeated

---

[5] There was no evidence presented at trial, however, that defendant was entitled to unemployment benefits. If the job to which the psychologist was referring was the job defendant had when his father died, he testified that he had gotten it only one week before his father's death, and it lasted only a week or two. Therefore, even if defendant was not working "under the table" at this job, its brief duration alone might explain why he did not apply for unemployment benefits.

[6] Defendant's testimony differed from this. He claimed that, after his father died, he sought medical care for his depression (which he failed to report to the psychologist, even though asked) and, as stated before, was on antidepressants and did not begin drinking until he ran out of the medication at a point in time he did not specify.

[7] He told her that his father died on June 9, 2006. However, she conceded that when he made this statement, he was no longer severely depressed, therefore, despite her testimony, his asserted depression could not serve as a reason for his confusion about the date. There was also no evidence that defendant was severely depressed at the time of trial. Yet, he incorrectly testified that his father died June 26.

that he was depressed and disabled. She opined that the failure to register by someone who had registered for years, then experienced "something significant that caused them not to register," would be caused by the disability she testified defendant was suffering at the time. She testified that defendant told her he did not register in July because he just didn't care.

During direct examination of the psychologist, defense counsel asked her whether defendant did not register because he just did not care or because he forgot.[8] She began to answer the question as follows, "I think he was so disabled . . . ." Probably anticipating that she was about to say that defendant was so disabled that he was incapable of registering, the prosecutor objected. At a sidebar, the psychologist made the following offer of proof, "I don't believe it was an issue of someone who just forgot. I think it was an issue of somebody who was so disabled that they just couldn't get it together to do it." She went on to elaborate with her opinion that defendant was so lethargic and depressed that nothing mattered anymore. The prosecutor asserted that the psychologist could not opine whether defendant, due to his severe depression, was able to form the requisite intent for failing to register. The trial court pointed out that the California Supreme Court had held that the "defense" that a person did not register because they forgot due to depression was not available unless the person's condition was severe, as with Alzheimer's or brain trauma, but not depression.[9] The trial court instructed the

---

[8] This question preceded the psychologist's testimony that defendant told her he failed to register because he just did not care.

[9] *People v. Barker* (2004) 34 Cal.4th 345, 348 [18 Cal.Rptr.3d 260, 96 P.3d 507] (*Barker*), held that the willfulness element of the registration requirement could not be negated by just forgetting to register. The *Barker* court said, "We do not here express an opinion as to whether forgetfulness resulting from, for example, an *acute psychological condition*, or a *chronic deficit of memory or intelligence* might negate . . . willfulness . . . ." (*Id.* at p. 358.) That issue, was, however, addressed in *People v. Sorden* (2005) 36 Cal.4th 65 [29 Cal.Rptr.3d 777, 113 P.3d 565] (*Sorden*), which we discuss later in this opinion.

The trial court here, in referring to the California Supreme Court case that was assertedly on point noted that that opinion was followed with a dissent, which *Barker* was, and *Sorden* was not, but *Barker* did not contain the language about Alzheimer's or brain trauma, which *Sorden* does. Actually, neither case is on point, although, as we state later in this opinion, language in *Sorden* is helpful to a resolution of the issues presented here.

Defendant cites language in *Barker* that, " 'a debilitating injury, illness or mental infirmity might objectively *prevent* a defendant from registering . . . , thereby rendering "unwillful" the defendant's failure to register . . . and providing a defense whether or not the defendant had also . . . forgotten . . . to register.' " (*Barker, supra*, 34 Cal.4th at p. 353.) This was merely a quote from the opinion of the Court of Appeal in *Barker* and did not constitute a holding by the California Supreme Court, nor was that particular issue before the Supreme Court in its opinion.

psychologist not to testify on the ultimate question whether defendant willfully failed to register—that the jury instructions required only that defendant be aware of his duty to register and that he failed to do it.

■   Defendant here takes issue with the trial court's ruling that the psychologist could not opine that he was so disabled psychologically that he could not register. However, he cites not one case and provides no analysis whatsoever that his asserted disability is a defense to his failure to register. Moreover, despite the ruling, the psychologist testified repeatedly that defendant was severely depressed and disabled—the latter so much so that he was not functioning adequately and appropriately. Defendant made almost identical assertions on the stand. However, without law supporting his position that severe depression and/or psychological disability absolves one of the duty to register, *despite the person's knowledge of that duty*, all of this evidence was irrelevant. Neither below nor here did defendant present such authority.

■   Defendant was charged with willfully failing to register. The jury was instructed that the only state of mind defendant was required to have to be convicted of this offense was as follows, "Someone commits an act willfully when he . . . does it willingly or on purpose. The word 'willfully' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or to make the omission referred to." The psychologist could not have taken her testimony further on this issue without stating that defendant's disability prevented him from acting willfully or on purpose in failing to register.[10] However, as the trial court found, such testimony would have been inadmissible because it would have invaded the province of the jury. (See *People v. Frederick* (2006) 142 Cal.App.4th 400, 412 [48 Cal.Rptr.3d 585].) It also would have violated the prohibition on an expert offering an opinion whether the defendant actually formed the requisite intent. (§ 29; *People v. Vieira* (2005) 35 Cal.4th 264, 292 [25 Cal.Rptr.3d 337,

---

[10] Defendant's assertion, in his reply brief, that the psychologist would only have testified that he was unable to go to the sheriff's station to register, would have necessarily addressed her opinion about defendant's willfulness. Clearly, she was not implying that defendant was physically incapable of going to the station—he continued to work, at times, eat, sleep and take care of his basic human needs, and, according to his testimony, his fiancée was available to drive him to and from his obligations. Certainly, there was no testimony he was incapacitated in October when he made the appointment to register and then failed to show up for it. Neither the psychologist nor defendant asserted that he wanted to register in July, but was physically incapable of doing so. What both were asserting was that he was so depressed that he lacked the motivation to register, despite knowing that he had to. Thus, the psychologist's opinion in this regard would have necessarily addressed the willingness issue.

106 P.3d 990]; *People v. Smithey* (1999) 20 Cal.4th 936, 960–961 [86 Cal.Rptr.2d 243, 978 P.2d 1171].)[11]

■ More importantly, such a defense is simply unavailable for this crime. The failure to register is, as the trial court observed, a general intent crime. (*People v. Johnson* (1998) 67 Cal.App.4th 67, 72 [78 Cal.Rptr.2d 795].) "Evidence of defendant's mental condition is not admissible to prove the absence of general intent." (*People v. Jefferson* (2004) 119 Cal.App.4th 508, 519 [14 Cal.Rptr.3d 473]; accord, *People v. Velez* (1985) 175 Cal.App.3d 785, 792 [221 Cal.Rptr. 631].)

2. *Jury Instructions*

a. *Failure to Instruct That Severe Depression Excuses the Registration Requirement*

Defendant asserts that the trial court had a sua sponte duty[12] to instruct that his severe depression was a defense to his failure to register. Having concluded that such a defense was unavailable to defendant, we necessarily reject this contention.

b. *Instruction That Severe Depression Does Not Excuse the Duty to Register*

The jury was instructed, "Only the most disabling conditions may negate the willfulness element of this offense. Some examples would be severe Alzheimer's disease . . . [and] general amnesia induced by severe trauma. [¶] Severe depression does not excuse a convicted sex offender from the registration requirements of Penal Code section 290."

Defendant here contends that the Supreme Court case upon which the trial court ostensibly relied in giving this instruction, *Sorden, supra*, 36 Cal.4th 65, did not, in fact, support it. Defendant is both correct and incorrect.

---

[11] Section 29 provides, in pertinent part, "In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to . . . intent . . . ."

[12] He does not assert that he requested such an instruction and no such request appears in the record before us. We note that discussions between the trial court and counsel concerning jury instructions were not transcribed, a most regrettable circumstance.

■ In *Sorden*, our high court held that the "willfulness element of the offense may be negated by evidence that an involuntary condition—physical or mental . . .—deprived a defendant of actual *knowledge of his . . . duty to register*. Only the most disabling of conditions . . . would qualify . . . . Severe Alzheimer's disease is one example . . . general amnesia induced by severe trauma is another." (*Sorden, supra,* 36 Cal.4th at p. 69, italics added.) The trial court's instruction omitted the important notion that the significantly disabling physical or mental condition had to deprive the defendant of *knowledge of his duty to register*. In that regard, the instruction was incorrect. However, since defendant acknowledged knowing on his birthday that he had to register, that error did not prejudice him. Moreover, our conclusion that severe depression was unavailable to defendant as a defense to his failure to register compels the conclusion that the second portion of the instruction was correct.

However, *Sorden* contains language which is instructive. In *Sorden*, the defendant, who, like defendant here, had carried out his obligation to register for years, claimed that his depression then made him forget to register and he was "stunned" when he realized his omission. (*Sorden, supra,* 36 Cal.4th at pp. 69, 70.) The court said, "There is no question but that [the defendant] knew of his duty to register. He simply claimed his depression made it more difficult for him to remember to register. However, life is difficult for everyone. As a society, we have become increasingly aware of how many of our fellow citizens must cope with significant physical and mental disabilities. But cope they do, as best they can, for cope they must. So, too, must [the] defendant and other sex offenders learn to cope by taking the necessary measures to remind themselves to discharge their legally mandated registration requirements. It is simply not enough for a defendant to assert a selective impairment that conveniently affects his memory as to registering, but otherwise leaves him largely functional.[13] [¶] The public policy underlying [the registration requirement] supports this conclusion. . . . [C]ountenancing the excuse that a defendant just forgot to register ' "would effectively 'eviscerate' " ' [the registration requirement]. [Citation.] [¶] ' "The purpose of [the registration requirement] is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all

---

[13] Certainly, there was no evidence that by October, when defendant made the appointment to register, he was experiencing severe depression. In fact, as stated before, he testified that he had begun driving again and he was working at the time. Despite this, he failed to report for registration because it was not "convenient." We suspect that if defendant had appeared for this appointment, he would not have been arrested and this case would never have been brought. Nevertheless, the jury was free to infer from his attitude in October that he had a similar one in July.

times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]" [Citations.] . . . [¶] . . . ". . . The statute is . . . regulatory in nature, intended to accomplish the government's objective by mandating certain affirmative acts. Compliance is essential to that objective; lack of compliance fatal." [Citation.]' [Citation.] [¶] . . . [M]ost convicted sex offenders have mood disorders, and nearly a quarter of them suffer from major depression. Indeed, [the] defendant claimed the very act of registering had a 'negative effect' on him."[14] (*Id.* at pp. 72–73, italics & fn. omitted.)

*Sorden* says much about the importance of registering and the obligation of registrants to fulfill their duty to do so, despite whatever mental problems they are experiencing.

As stated before, defendant cites no authority that compels the conclusion that depression excused his duty to register.

### 3. *Incompetency of Trial Counsel*

Having concluded that there were no evidentiary or instructional errors, we necessarily conclude that any failure on the part of trial counsel for defendant to object or to request an instruction did not constitute prejudicial incompetency.

### 4. *Sentencing*

The trial court declined to grant defendant probation, finding that his conviction of a felony in 2006, in addition to a felony conviction in 1993, rendered him ineligible, absent unusual circumstances (§ 1203, subd. (e)(4)), and the 2006 felony weighed heavily on the court's mind.

Despite this fact, defendant contends that his failure to register was a technical and de minimis violation of his obligation and was the result of his severe depression. He appears to argue,[15] therefore, that the trial court abused its discretion in refusing to grant him probation. Had defendant not ignored his obligation to register in October when he was not severely depressed, was working, driving a car, and functioning enough to decide that showing up for his appointment to register was "an inconvenience," he might have a more persuasive case. However, under the circumstances, we cannot agree that the trial court acted unreasonably in imposing the lower term.

---

[14] Defendant's claim in his reply brief that unlike Sorden, he "never . . . expressed any resentment about his registration requirement" ignores his trial testimony, as we have already stated, that he found each occasion of registration unpleasant.

[15] As the People correctly state, defendant is not entirely clear in his assertion of error.

## Disposition

The judgment is affirmed.

McKinster, J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 14, 2010, S179906. George, C. J., did not participate therein.