Filed 7/26/23  P. v. Brown CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079179 |
| v. | (Super.Ct.No. CVRI2200226) |
| TED MICHAEL BROWN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Randall S. Stamen, Judge.  Reversed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following his 1994 conviction on 11 counts of lewd and lascivious conduct upon a child under the age of 14 years (Pen. Code, § 288, subd. (a); all undesignated statutory references are to the Penal Code), the trial court sentenced defendant Ted Michael Brown to 14 years in state prison. As a result of his convictions, defendant was required to register for life as a sex offender. (Former § 290.) Under current law, however, defendant is no longer required to register for life, and in 2022 he unsuccessfully petitioned to terminate his mandatory sex offender registration. On appeal, defendant argues there is no evidence in the record that he poses a current risk to public safety if his sex offender registration is terminated. Because the People did not establish a likelihood that defendant will reoffend, we reverse the order denying defendant's petition.

I.

FACTS AND PROCEDURAL BACKGROUND

Like the parties, we take the underlying facts of this case from the 1994 presentencing report prepared by the probation department.

In late 1993, a woman with whom defendant had a relationship reported to the police that defendant had been sexually molesting her daughter for the last year or more. The victim's mother told the police that she and her daughter would stay at defendant's Lake Elsinore residence on weekends. The victim said that, starting when she was eight years old, defendant touched and licked her breasts and vagina and had her rub his penis until he ejaculated. The molestation escalated to vaginal and anal penetration. Once, when defendant tried to penetrate the victim's vagina with his penis, the victim said it hurt. Defendant said he would "wait until she got bigger." Defendant always told the

2

victim he loved her; he would promise her things; he bought her dolls, crayons, and coloring books; and he told the victim not to tell anyone about the molestation and threatened to hurt the victim if she did not comply.

When interviewed by the police, defendant admitted that he molested the victim at least six or seven times when she and her mother stayed at his residence. He admitted to fondling the victim and having her ejaculate him, and he admitted that he tried to penetrate the victim's vagina with his penis but that he stopped when the victim said it hurt. Defendant told a detective he knew what he was doing wrong, but he did it anyway. He said the victim's mother had said the victim was "boy crazy," and that he did not believe he had harmed the victim physically or psychologically.

The investigating detective opined defendant was a "predatory pedophile," who had expressed no remorse for his actions and "will definitely reoffend if given the chance." Moreover, the detective indicated defendant lied during his trial and denied making incriminating statements during his interview with the police.

A psychological evaluation conducted by Dr. Rath indicated defendant suffered from chronic physical illness, anxiety, passivity, and unmet dependency needs. Dr. Rath opined defendant was not a predatory pedophile but was instead a "regressed" and "opportunistic offender," who molested the victim "to meet his chronic dependency needs" through sexual interaction. Defendant "would not likely seek children out in a non-familial situation." Dr. Rath opined defendant would require psychological treatment and would benefit from group therapy.

3

Following a bench trial, the court found defendant guilty on 11 counts of lewd and lascivious conduct against a child under 14 years of age, in violation of section 288, subdivision (a), and it dismissed one additional count. (*People v. Brown* (Nov. 26, 1996, E015576) [nonpub. opn.].) The trial court initially sentenced defendant to state prison for 16 years, but on its own motion, the court recalled the sentence and resentenced him to 14 years. (*Ibid*.) This court affirmed the judgment (*ibid.*), and the California Supreme Court denied review (*People v. Brown*, Feb. 19, 1997, S058238).

In January 2022, defendant filed a petition under section 290.5 to terminate his sex offender registration. Defendant alleged that, under the current version of section 290, he is a tier 2 registrant and had registered for at least 20 years. (See § 290, subd. (d), as amended by Stats. 2017, ch. 541, § 2.5.) In addition, defendant submitted proof that he had not suffered any subsequent convictions for failure to register or for a new sex offense. The district attorney objected to the petition and requested a hearing to determine whether community safety would be significantly enhanced by continued sex offender registration.

In a memorandum in support of the petition, defendant's attorney indicated that "'significantly enhanced,'" as used in section 290.5, had not been judicially defined but, using common dictionary definitions, it should be interpreted to mean "something that is large enough to be noticed or have an effect." Counsel argued the bare facts of defendant's 30-year-old offenses did not demonstrate continued registration would increase public safety "to a large or noticeable degree going forward," and the People bore the burden of proving defendant currently "remains a danger and continues to

present a danger to the community today and going further." In addition, counsel asserted the Department of Corrections and Rehabilitation did not begin using the state-authorized risk assessment tool for sex offenders (SARATSO)[1] until 2005 and, therefore, it was unlikely one was performed on defendant at the time of his parole. Therefore, counsel completed a STATIC-99R tally sheet. Based on various factors such as defendant's age at the time of his offenses and his current age, his lack of prior and subsequent convictions for sex offenses, and the fact his victim was not a stranger, the tally sheet indicated defendant had a below average risk of reoffense at the time of his parole and a very low risk of reoffense at the present. Therefore, counsel argued there was no evidence community safety would be significantly enhanced by continued sex offender registration, and the court should grant the petition.

At the July 2022 hearing on defendant's petition, the prosecutor argued the petition should be denied because continued sex offender registration would significantly enhance public safety. She agreed with defendant's attorney that "significantly enhanced" had not yet been judicially defined, and it should be given a "common meaning." Based entirely on the facts of defendant's 1994 convictions and the probation department's report, the district attorney argued defendant was an opportunistic offender and the community would benefit from continued registration. The prosecutor argued

---

[1] Since January 1, 2007, the SARATSO for adult male sex offenders has been the STATIC-99 risk assessment scale. (§ 290.04, subds. (a), (b)(1).) "'The Static-99R is a revised version of the Static-99 that takes into account the age of a sexual offender based on statistics showing the risk of sexual reoffense decreases as the offender ages.'" (*People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1067, fn. 6 (*LaBlanc*).).)

defendant suffered no apparent hardship from having to register as a sex offender and the stigma associated with registration was "greatly outweighed by the community protection in this case."

Defendant's attorney informed the court that, as a condition of parole, defendant had successfully completed a sex offender counseling program. Counsel also informed the court that defendant (who was 69 years old at the time) suffered from a life-long heart condition and had undergone four heart surgeries since 2011. In addition, defendant had a compromised immune system and suffered permanent damage to his liver from a COVID-19 vaccine, from which he may never recover. Due to these conditions, defendant was afraid to leave his home and did not socialize. According to counsel, defendant spent all his time with his girlfriend of 18 years with whom he had a stable and committed relationship. Counsel referred the court to Dr. Rath's assessment that defendant was not a danger to the public; that section 290.5 reflected the Legislature's conclusion that sexual abuse in a familial setting poses less of a risk to the general community; and to defendant's very low risk of reoffense as indicated in the STATIC-99R tally sheet. And, crucially, defendant had not reoffended in more than 20 years. In sum, counsel argued defendant had demonstrated he was not a risk, "and community safety would not be enhanced by his continued registration, let alone significantly."

The prosecutor responded that the purpose of sex offender registration "is to prevent future crimes, future convictions" and, regardless of the fact defendant's offenses took place in a familial setting, public safety would be significantly enhanced by continued registration and defendant would suffer no hardship. The prosecutor accepted

6

defense counsel's representation that defendant completed "some type of treatment while on parole."

The court took the matter under submission. In a subsequent ruling, the trial court found community safety would be significantly enhanced by continued sex offender registration and denied the petition. Of the 12 facts and issues the court listed as constituting its reasons for denying the petition, nine addressed the underlying facts of defendant's conviction and the competing opinions of the investigating detective and Dr. Rath included in the probation report. Only three addressed defendant's current risk of reoffending: (1) defendant had completed "some type" of sex offender therapy after his release from prison; (2) defendant had "no post-conviction criminal history"; and (3) defendant's attorney had submitted a STATIC-99R tally sheet. Finally, the court ruled defendant could file another petition in three years. Defendant timely appealed.

II.

DISCUSSION

A.    *Applicable Law and Standard of Review.*

"California law requires persons convicted of specified sex crimes against a child, including violations of section 288, to register as a sex offender while they live, work, or attend school in California. (§ 290, subds. (b), (c); *People v. Mosley* (2015) 60 Cal.4th 1044, 1048 . . . .) Commencing January 1, 2021, Senate Bill No. 384 (2017-2018 Reg. Sess.) . . . restructured the sex offender registration requirement, establishing three tiers of registration for sex offenders, primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier three). (Stats.

7

2017, ch. 541, § 2.5; see § 290, subd. (d).)" (*People v. Thai* (2023) 90 Cal.App.5th 427, 432 (*Thai*).) The purpose of Senate Bill No. 384 was to improve public safety by focusing resources on those sex offenders who pose the greatest risk based on the severity of their offense and their likelihood of recidivism, while allowing less serious or lower-risk sex offenders to seek termination from the sex offender registry. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 384 (2017-2018 Reg. Sess.) as amended Sept. 8, 2017, pp. 12-13.)

"Operative July 1, 2021, Senate Bill 384 established procedures for a person to seek termination from the sex offender registry if the person meets certain criteria, including completion of the mandated minimum registration period. (§ 290.5, subds. (a)-(c).) The prosecution may request a hearing and present evidence to establish 'community safety would be significantly enhanced by requiring continued registration.' (§ 290.5, subd. (a)(2), (3).)" (*Thai*, *supra*, 90 Cal.App.5th at p. 432.) The People must prove by a preponderance of the evidence that terminating the registration requirement will considerably increase the risk to public safety because defendant is "*currently* likely to reoffend." (*Id.* at p. 433; see Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."].) If the People do not timely request a hearing, and a defendant meets the requirements for termination of sex offender registration, there are no charges pending against that defendant, and that defendant is not in custody, on parole, probation, or supervised release, the court must grant the petition. (§ 290.5, subd. (a)(3).)

8

Recently, the Court of Appeal in *Thai*, *supra*, 90 Cal.App.5th 427, at page 432, addressed what it means under section 290.5, subdivision (a)(3), for public safety to be "significantly enhanced" by continued sex offender registration. "Section 290.5 does not define the phrase 'community safety would be significantly enhanced.' The purpose of section 290 is to ensure police can surveil sex offenders at all times because they pose a """"continuing threat to society."""" (*People v. Sorden* (2005) 36 Cal.4th 65, 73 . . . .) In the absence of a statutory definition, words should be given their usual and ordinary meanings. (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 376 . . . .)" (*Ibid.*) The *Thai* court relied on common dictionary definitions. "'Significant' is defined as 'having or likely to have influence or effect: deserving to be considered: important, weighty, notable.' (Webster's 3d New Internat. Dict. (1981) p. 2116, col. 2, capitalization omitted.) 'Enhanced' is defined as to raise or lift. (*Id.* at p. 753, col. 3.) Thus, the prosecution must produce evidence establishing that requiring continued registration appreciably increased society's safety." (*Thai*, at p. 432.)

When making its determination whether continued registration will significantly enhance public safety, the court must consider "the nature and facts of the registerable offense; the age and number of victims; whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); criminal and relevant noncriminal behavior before and after conviction for the registerable offense; the time period during which the person has not reoffended; successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and the

9

person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (§ 290.5, subd. (a)(3).) The court may base its determination on the affidavits, declarations, police reports, or any other "reliable, material, and relevant" evidence submitted by the parties. (*Ibid*.)

"If termination from the registry is denied, the court shall set the time period after which the person can repetition for termination, which shall be at least one year from the date of the denial, but not to exceed five years, based on facts presented at the hearing." (§ 290.5, subd. (a)(4); see *id*., subd. (a)(5) [trial court must "notify the Department of Justice, California Sex Offender Registry," of denial and of period after which defendant may again petition for removal].) And, the trial court must state on the record its reason or reasons for denying the petition and its reason for selecting the time period after which a defendant may once more petition for removal. (*Id*., subd. (a)(2), (4).)

Defendant contends, and the People do not dispute, that an order denying a petition under section 290.5 is an appealable postjudgment order affecting his substantial rights. (§ 1237, subd. (b).) "An appellate court reviews the trial court's ruling on a petition for termination from the sex offender registry for abuse of discretion. (*Lewis v. Superior Court* (2008) 169 Cal.App.4th 70, 79 . . . .) To establish an abuse of discretion, a defendant must demonstrate the trial court's decision fell outside the bounds of reason, i.e., was arbitrary, capricious, or patently absurd. (*People v. Johnson* (2022) 12 Cal.5th 544, 605-606 . . . [debatable ruling is not an abuse of discretion].) [¶] 'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to

10

the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712 . . . , fns. omitted.) A trial court abuses its discretion when its factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156 . . . .)" (*Thai*, *supra*, 90 Cal.App.5th at p. 433.)

B.     *The People Did Not Meet Their Burden of Proving Defendant Is a Current Risk of Reoffending*.

In its respondent's brief, the People, as represented by the Attorney General, argue the severity of defendant's offenses and a supposed lack of a change in defendant's circumstances support the denial of defendant's petition. According to the People, defendant did not establish "that he was no longer an opportunistic offender [who] pos[es] a risk to the community." While conceding defendant had been law-abiding for more than 20 years and had met the minimum requirements for relief under section 290.5, the People argue defendant had not established "his actual rehabilitation." Moreover, the People argue: defendant's alleged lack of remorse at the time of his offense "was astonishing"; nothing shows he has accepted responsibility for his actions; and the only evidence that he has a low risk of reoffending—the STATIC-99R tally sheet completed by his attorney—is a weak assessment tool and merely accounts for defendant's age, lack of prior convictions, and the sheer passage of time.

This case is like *Thai*, *supra*, 90 Cal.App.5th 427. There, the defendant molested a 12-year-old boy, who had visited the defendant's store and had spoken with the defendant more than 40 times. The defendant was sentenced to three years in state prison after he pleaded guilty to one count of committing a lewd and lascivious act on a child under the age of 14 years in violation of section 288, subdivision (a), and he was ordered to register as a sex offender pursuant to former section 290. (*Thai*, at p. 430.) Twenty-three years later, the defendant petitioned for relief under section 290.5. While conceding the defendant had not been convicted of any subsequent offenses, the prosecutor argued the petition should be denied because the facts of the defendant's offense were egregious, the defendant had suffered prior misdemeanor convictions for selling alcohol to minors, the defendant's statements to the police after the offense showed a lack of remorse, and it appeared the defendant had not completed sex offender treatment. (*Ibid*.)

At a hearing on the petition, the defense attorney informed the court the defendant had not completed a certified sex offender program because the sex offender management board did not yet exist, but that defendant recalled attending counseling while on parole. Counsel also informed the court defendant had not been assessed using the STATIC-99 because it was not a commonly used tool at the time of his sentence. (*Thai*, *supra*, 90 Cal.App.5th at p. 431.) Moreover, counsel argued defendant had suffered no convictions in the 24 years since the underlying offense; he had registered for more than 21 years; he had accepted responsibility for his actions by pleading guilty and attending counseling while on parole; the longer a sex offender does not reoffend the lower the risk of recidivism; and there was no evidence the defendant was currently a danger. (*Ibid*.)

12

Although the trial court stated it did not consider the circumstances of the defendant's offense alone, it stated those facts weighed heavily in its decision to deny the petition and to rule the defendant could not repetition for five years. (*Id*. at pp. 431-432.)

On appeal, the appellate court ruled there was insufficient evidence to support the trial court's ruling that continued sex offender registration would significantly enhance public safety because the prosecution had not met its burden of establishing the defendant "was *currently* likely to reoffend." (*Thai*, *supra*, 90 Cal.App.5th at p. 433.) Although the trial court had said it was considering all relevant factors, it was "singularly focused" on the "'egregious'" facts of the offense and ignored contrary evidence. (*Id*. at p. 434.) For instance, the appellate court noted the record showed the victim was not a stranger to the defendant, and "having a stranger victim is related to recidivism." (*Id*. at pp. 433-444; accord, *People v. Johnson* (2020) 45 Cal.App.5th 379, 387 [STATIC-99R accounts for "'whether any sex offenses were against unrelated victims or strangers.'"].) Moreover, the prosecutor below presented no evidence to support its assertions that the defendant had suffered two prior misdemeanor convictions, that he showed no remorse and joked about his offense, and that he had completed no sex offender treatment. (*Thai*, at p. 434.) Finally, when the Attorney General faulted the defendant for not presenting evidence that he had completed a sex offender treatment program or a current risk assessment, the appellate court stated, "He forgets it was the prosecution's burden to establish [the defendant] was a current risk and it could have sought a current risk assessment." (*Ibid*.)

"Other than evidence of the 24-year-old underlying offense, the prosecution offered no evidence [the defendant] presents a danger today. Indeed, the evidence

13

demonstrates the opposite. For almost 24 years, [the defendant] had not suffered any conviction." (*Thai*, *supra*, 90 Cal.App.5th at p. 434.) The court acknowledged the defendant's conduct was "deplorable" and had a profound effect on the victim. However, the court held "the prosecution failed to establish with reasonable, credible, and solid evidence 'community safety would be significantly enhanced' by requiring [the defendant] to register with the sex offender registry for five years. In short, the prosecution failed to meet its burden as required by the statute. Therefore, the trial court abused its discretion by denying [the defendant's] petition." (*Id*. at pp. 434-435.)

Here too, the trial court and prosecutor were singularly focused on the facts of the underlying offense and ignored or completely discounted contrary evidence that tends to demonstrate defendant is not a current risk. The abuse took place in a familial setting and the victim was not a stranger; defendant has not reoffended in more than 20 years; he suffered no prior convictions; he completed sex offender treatment and counseling while on parole; and he continuously registered as a sex offender since his release from prison. Moreover, defendant is now 70 years old and in the last 20 years his health—which was already fragile at the time of the offense—has deteriorated considerably. Contrary to the suggestion in the People's brief on appeal, the latter factors are not inconsequential. In the related context of the civil commitment of sexually violent predators, this court has held that the sheer passage of time, advanced age, and deteriorating health are highly relevant factors when determining whether a sex offender is likely to reoffend, and those facts cannot be ignored by the trial court. (*LaBlanc*, *supra*, 238 Cal.App.4th at pp. 1075-1077.)

14

More importantly, the People erroneously seek to place the burden of proof on defendant to prove he has been rehabilitated and is no longer an opportunistic sex offender. To the contrary, it was *the People's* affirmative burden to prove, with credible evidence, that defendant is *currently* a risk of reoffending and, therefore, that public safety would be significantly enhanced by continued sex offender registration. (*Thai*, *supra*, 90 Cal.App.5th at pp. 433-434.) But, other than relying on the unchanging facts of the more than 20-year-old offenses, the People failed to meet their burden of proof. Therefore, although we acknowledge that defendant's conduct was deplorable and had an incalculable effect on the child victim and her mother, we must conclude the trial court abused its discretion by denying defendant's petition and ordering him to register for an additional three years. (*Id.* at p. 435.)

III.

DISPOSITION

The order denying defendant's petition is reversed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

FIELDS
J.

15