Filed 1/20/15  P. v. Fiset CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049393 |
| v. | (Super. Ct. No. 10NF2806) |
| EUGENE ROLAND FISET, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendant and Appellant. | (NO CHANGE IN JUDGMENT) |

THE OPINION filed December 24, 2014, is ordered modified as follows:

1.  On page 6, in the first sentence beginning "On April 29, 2013," the name "Michael Rodriguez" is changed to "Michael Ramirez."

2.  On page 5, in the third full paragraph, change the second sentence in the paragraph to read, "In fact, Duran could recall only a single instance when defendant did not appear for his appointment."

3.  On page 5, in the fourth full paragraph, change the fourth sentence in the paragraph to read, "But according to Duran, defendant complied with his moving re-registration requirement in 2012."

4.  On page 12, in the second full paragraph, delete the second sentence, "He performed both tasks in 2012."

This modification does not effect a change in the judgment.  The petition for rehearing is DENIED.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>EUGENE ROLAND FISET,<br><br>  Defendant and Appellant. | G049393<br><br>(Super. Ct. No. 10NF2806)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

Stephen M. Vasil, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Kathryn Kirschbaum and Scott Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Eugene Roland Fiset appeals from an order revoking probation on grounds he willfully failed to register as a sex offender within five days of his birthday (Pen. Code, § 290.012, subd. (a))[1] and within five days of a move (§ 290.013). The trial court also found defendant violated his probation by not cooperating in his sex offender treatment program, but defendant does not directly challenge the latter finding on appeal.[2]

In light of the California Supreme Court holding "the willfulness element of the [failure to register] offense may be negated by evidence that an involuntary condition-physical or mental, temporary or permanent-deprived a defendant of actual knowledge of his or her duty to register[,]" in *People v. Sorden* (2005) 36 Cal.4th 65 (*Sorden*), the trial court permitted defendant to present evidence in support of his claim that cognitive impairment of an unspecified nature deprived him of the actual knowledge of his duty to register under section 290. The trial court found defendant's evidence insufficient to negate the willfulness element of the offense. Defendant challenges the sufficiency of the evidence to support that finding. However, defendant's challenge fails under the applicable standard of review, and we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

In September 2010, then 81-year-old defendant was charged with having committed a lewd act with a child less than 14 years of age (§ 288, subd. (a); count 1) on June 21, 2009, and two counts of annoying or molesting a child under age 18 (§ 647.6, subd. (a)(1); counts 2, 3) on September 29, 2009.

---

[1] All further statutory references are to the Penal Code.

[2] The trial court found not true allegations defendant possessed photographic equipment in violation of another term of his probation.

According to testimony at the preliminary examination, during a Father's Day 2009 celebration at defendant's home, he took his then six-year-old great-granddaughter into a tent pitched in his backyard and repeatedly tried to pull her pants down, and he touched and squeezed her vaginal area over her clothes. Then, he told her not to tell anyone what had happened. During roughly the same time period, defendant sent numerous letters to two teenage girls, some of which expressed defendant's desire to marry the girls and have sex with them.

Following the preliminary hearing, defendant pled guilty to counts 1 and 2 on the condition count 3 be dismissed and defendant receive a grant of probation. The factual basis for the plea states: "In Orange County, California, on [June 21, 2009], I did willfully and unlawfully commit a lewd [and] lascivious act upon the body with Jane Doe [No.] 1, my great granddaughter who was under the age of 14, [and] I did this with the intent to arouse[,] appeal [and] to gratify my sexual desires. [¶] Also, between September 29, 2009 [and] January 3, 2010, I did unlawfully annoy/molest Jane Does [Nos.] 2 [and] 3, who were both under 18 years old."

The trial court placed defendant on probation for five years with various terms and conditions, including that he serve 365 days in jail, pay a fine and restitution, maintain lifetime registration as a sex offender (§ 290), cooperate with his probation officer, stay away from minors and places minors congregate, not possess any type of photographic equipment without permission, enroll and complete an outpatient or residential sex offender treatment program, and obey all laws.

1. *Probation Violation Background*

In February 2013, the probation department filed a petition for revocation of probation, alleging defendant failed to cooperate with his probation officer in his plan of psychiatric treatment or counseling after he was terminated from sex offender treatment program for his unwillingness to cooperate with therapy, and that he possessed a cell phone camera without permission.

According to the probation officer's affidavit, defendant's cell phone was searched during an office visit and found to have a camera feature. Defendant claimed the phone belonged to someone else, although he admitted putting a piece of black tape over the lens aperture. The phone was confiscated, but defendant refused to sign a property slip.

The affidavit also stated defendant had been "terminated from sex offender treatment for violation of treatment guidelines due to an unwillingness to cooperate with therapy and refus[al] to take any responsibility for any sexual abuse." In fact, the probation officer reported defendant had been disruptive and uncooperative, and had stated, "My granddaughter and daughter are both liars and will be punished by God for trying to steal my house and money by making up these charges of sexual abuse, I never did anything and I will never cooperate by saying I did, all those kids who said I did something are liars." Defendant denied the allegations in the petition and the trial court set a date for a probation violation hearing.

While defendant was awaiting his hearing date, a second revocation petition was filed. The petition alleged defendant violated the law by failing to update his annual sex offender registration and by not registering within five days of a recent move and his birthday. Defendant denied these allegations too, and the trial court held a combined contested revocation hearing.

2. *Probation Violation Hearing*

*a. Prosecution's Case*

Orange County licensed clinical social worker Eduardo Rendon testified that defendant had enrolled in his mandatory two-year treatment for sex offenders in May 2012 pursuant to a condition of his probation. However, defendant was terminated from the program in January 2013. According to Rendon, an important tool in preventing relapses in sex offenders is their willingness "to take responsibility for their offenses and develop a plan to prevent future offenses . . . ." However, Rendon testified defendant

4

was "very difficult, very uncooperative," and that no matter how many times Rendon emphasized the need for defendant to take responsibility for his crimes, defendant refused. To the contrary, defendant accused his victims and their families of manufacturing his crimes in an effort to take his property and money.

Rendon also testified defendant was prompt for group sessions, always paid his $20 fee for class, and always had appropriate personal hygiene and dress. Rendon admitted giving defendant better interim reviews than he probably deserved because, as Rendon put it, he was "attempting to work with [defendant] to keep him in the program." However, Rendon also stated he never noticed defendant have memory challenges, with the exception of defendant's claim to not have molested his victims, nor did Rendon ever suspect defendant might have dementia.

Orange County Probation Officer Leobardo Duran testified he was defendant's assigned probation officer from August 2012 through April 2013. Duran indoctrinated defendant into the terms and conditions of his probation, including the requirement to cooperate in treatment and the section 290 registration obligations.

Duran testified defendant came to his probation department office every other week from August 2012 to April 2013. In fact, Duran could not recall a single instance when defendant did not appear for his appointment.

In November 2012, defendant reported to Duran's office. A search of his person yielded a cell phone, and Duran noticed the phone had a camera feature. Defendant's probation included a prohibition against possession of photographic equipment. The camera lens had a piece of black tape covering the aperture, and there were no stored pictures. But according to Duran, defendant complied with his annual re-registration requirement in 2012. Duran did not remind defendant of his duty to re-register on his birthday in 2013, but Duran did explain the requirement during his initial indoctrination.

5

On April 29, 2013, Duran met defendant and Michael Rodriguez, a friend from defendant's church. Defendant told Duran he had moved, although defendant could not say exactly what address he moved to, he did correctly identify the street, and with Rodriguez's assistance, defendant remembered that the date of his move was April 21, eight days before the appointment. Duran asked defendant if he had registered with the police as required by the terms of his probation, and defendant said that he had. However, when Duran asked for proof, defendant could not provide any. After a review of his records, Duran realized defendant also failed to register within five days of his February 1 birthday in 2013.

Duran admitted defendant's prior probation officer reported defendant was "difficult and frustrating, he's nearly deaf and not in touch with reality[.]" The probation officer had also questioned whether defendant had "mild retardation, handicap, or illness interfering with functioning." In fact, in July 2012, defendant's former probation officer reported defendant needed more care and suggested he move to a board and care facility.

### b. Defense Evidence

Defendant called Guadalupe Rivera, a family friend of 30 years, who testified that she started helping defendant when her own son rented a room from him in April 2012. Rivera testified she took defendant to all his probation appointments and completed his paperwork, including his sex offender registration, and that she helped him follow up with his various appointments. When asked by defense counsel if it appeared defendant "had difficulty understanding what was being asked of him," Rivera replied, "He don't know what's going on."

Rivera also testified to defendant's memory challenges, which she tried to address by purchasing a big calendar and writing down his scheduled appointments. She said, "He forget [*sic*] everything." In Rivera's opinion, defendant's memory had gotten "worse in the last year." She stated he frequently called her in the middle of the night to

6

take him to his probation meetings. She assumed defendant "don't know the day he's leaving or what time it was."

Bruce Fissette, defendant's biological son, testified that after his father's release from custody in April 2012, he started having problems remembering to do things like clean himself after using the restroom, or how to operate a microwave. He also testified his father seemed agitated and paced the floor. Fissette found an apartment for his father, but due to the compromised safety of the area and expense, he decided to put his father in a board and care facility. Defendant did not like the first facility they looked at, and he was evicted from a second facility after being there for only two days, but defendant stayed in the third board and care facility for several months. Fissette also testified his father often complained he was not being fed, although that turned out not to be the case.

Dr. Kara Cross, a licensed clinical psychologist, testified she interviewed defendant for three hours on August 19, 2013. She diagnosed defendant with cognitive disorder not otherwise specified. However, she also testified, "without the medical evidence, we couldn't say that it is dementia Alzheimer's type or vascular dementia or any other medical terminology." In her opinion, defendant could have suffered from this cognitive disorder as far back as August 2012.

When Cross tried to conduct a standard test with defendant, he was unable to answer some of the questions. She did not get a good history and physical because defendant did not seem able to recall historical information. Cross rated defendant's ability to understand and use common English words as borderline, which was below average but not impaired. The results of other tests indicated short-term memory problems and difficulties breaking down visual images and sorting through visual information. Cross ordered an MRI to help her diagnose defendant. While he initially agreed to undergo an MRI, defendant later refused to cooperate with medical personnel and he did not submit to the test.

7

On the other hand, Cross found no evidence defendant was malingering. She testified, "[defendant] has difficulty with several cognitive skills including abstract reasoning, immediate recall, planning, retaining information in order to work with it in working memory, being aware of newly learned pieces of information, being able to execute plans properly because of lack of retention of information so he can execute a plan, and visual spatial difficulties as a part of the cognitive disorder." Cross stated defendant's impairment was severe, but not very severe or profound. Although Cross could not state what was causing the problem, she did testify defendant had "memory difficulties . . . cognitive deficits that appear fairly global."

However, Cross agreed if an individual knew they had an appointment somewhere and had to plan to call a friend to arrange for transportation that would not be acting consistently with someone having a cognitive deficit.

*3. Trial Court Ruling*

Following a contested hearing, the trial court found not true the allegation defendant possessed photographic equipment. With respect to the allegations defendant violated probation by not cooperating with the sex offender treatment program, and by willfully failing to register within five days of his birthday and five days after his most recent move, the trial court found sufficient evidence defendant violated his probation.

The court stated in its ruling, "I looked long and hard at the evidence. I looked long and hard at that case. It's a very interesting case, that *Sorden* case, because what it's – it basically allows for the defense to put forward evidence to attack the willfulness element of section 290 which is a general intent crime. It requires actual knowledge of a duty to register. [¶] So the high court held that that type of evidence is relevant on the issue of actual knowledge. And they held specifically a person may suffer from an involuntary condition so disabling as to rob him of knowledge of his registration obligations under [section] 290. [¶] But they also state that when allowing for the defense to present evidence, which I did, they indicated that it must be substantial

8

evidence of an involuntary condition – temporary or permanent, physical or mental – that he lacked actual knowledge of his duty to register. [¶] And I don't find that the defense has presented substantial evidence to show that. I find the People have put forward other evidence that defendant had knowledge, actual knowledge of his duty to register. He had done it in the past, and he had done it recently . . . . [¶] . . . [¶] Yes. January 8. And looking at all the People's exhibits of his previous registration. [¶] So it's clear to the court that he had actual knowledge of his duty to register. He had done it before, complied with it. I don't think he was happy with it, which is not uncommon with people that have a lifetime registration requirement under [section] 290. [¶] But the test for me was whether or not there's substantial evidence of an involuntary condition so disabling as to rob him of knowledge of his registration obligations, and I don't find that that is present. Yes, there appears to be some issues that he's having some memory troubles and things of that nature. And that's supported by testimony of Ms. Rivera and then the expert testimony of Dr. Kara Cross. [¶] But at best, Dr. Cross could only offer the opinion that his pattern of difficulties was consistent with cognitive dysfunction. And she termed it as cognitive NOS and indicated that she would need more. And there was not any evidence presented of more. There was no medical evidence, CT scan, MRI, et cetera, which might elevate it to the substantial evidence requirement. And I just don't have that."

The court further noted defendant "is largely functional. He's intelligent. He's responsive. He made all of his classes. I think some 40 classes he never missed. Yes, he might have had some assistance in getting there, but he coped with that. . . . [¶] . . . [¶] And he never missed – I believe he never missed a probation meeting. If so, there was only one. . . . So he reported as required. He did everything else as required. So to come in here now and say, well, he had a cognitive dysfunction with his memory so he shouldn't be held accountable, that's simply not enough."

9

The trial court modified and "reinstate[d]"[3] probation on condition that defendant serve additional time in jail, maintain his current residence at a board and care facility, and submit to continuous electronic monitoring. The trial court also struck the condition that defendant complete a sex offender treatment program.

**DISCUSSION**

Defendant challenges the sufficiency of the evidence to prove he had actual knowledge of, and willfully violated, his duty to register as a sex offender. Section 1203.2, subdivision (a) authorizes a trial court to revoke the supervision of a person released on probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of his or her supervision."

A trial court is accorded "very broad discretion in determining whether a probationer has violated probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.) Although a probation violation need only be proven by a preponderance of the evidence (*Id.* at p. 447), when the sufficiency of the evidence supporting a trial court's probation revocation decision is challenged on appeal, we apply the substantial evidence standard of review.

Under the substantial evidence standard of review, "great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) We view the evidence in the light most favorable to the judgment, and we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive

---

[3] The trial court's use of the word "reinstate" implies the trial court revoked defendant's probation.

10

province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Only in a very extreme case should a reviewing court interfere with a trial court's discretion to revoke probation. (*People v. Rodriguez*, *supra*, 51 Cal.3d at p. 443.)

In order to establish a failure to register, the prosecutor must show the failure was willful. (§ 290.018, subd. (a).) In *People v. Garcia* (2001) 25 Cal.4th 744, 752 the California Supreme Court held the willfulness element of the statute requires actual knowledge of the duty to register and that "[a] jury may infer knowledge from notice, but notice alone does not necessarily satisfy the willfulness requirement." And, as noted above, in *Sorden*, *supra*, 36 Cal.4th at page 69, the California Supreme Court held "that the willfulness element of the offense may be negated by evidence that an involuntary condition – physical or mental, temporary or permanent – deprived a defendant of actual knowledge of his or her duty to register."

In *Sorden,* the issue was the admissibility of evidence in support of the defendant's claim his severe depression negated his actual knowledge. Defendant made an offer of proof his friends would testify that "he was depressed because (1) his mother had cancer; (2) the mother of his son, in order to terminate his visitation rights, had falsely accused him of being abusive to the boy; (3) he had broken up with his girlfriend; and (4) his dog had died." (*Sorden*, *supra*, 36 Cal.4th at p. 70.) "[D]efense counsel said the testimony of defendant's friends, as to 'what he was going through at the time,' would lay the foundation for an expert witness who would testify (1) that defendant was 'showing signs of clinical depression,' and (2) how depression affects 'concentration and memory.'" (*Ibid.*) The trial court ruled in limine that the evidence was not admissible. (*Ibid.*) The Court of Appeal reversed and the Supreme Court granted review.

The Supreme Court recognized "a person may suffer from an involuntary condition so disabling as to rob him of knowledge of his registration obligations under section 290. Therefore, in order to avoid any due process problems . . . defendant charged with [a] violation of section 290 may present substantial evidence that, because

11

of an involuntary condition–temporary or permanent, physical or mental– he lacked actual knowledge of his duty to register." (*Sorden*, *supra*, 36 Cal.4th at p. 72.) The high court concluded that the defendant had not proffered such evidence. "There is no question but that he knew of his duty to register. He simply claimed his depression made it more difficult for him to remember to register. However, life is difficult for everyone. As a society, we have become increasingly aware of how many of our fellow citizens must cope with significant physical and mental disabilities. But cope they do, as best they can, for cope they must. So, too, must defendant and other sex offenders learn to cope by taking the necessary measures to remind themselves to discharge their legally mandated registration requirements. It is simply not enough for a defendant to assert a selective impairment that conveniently affects his memory as to registering, but otherwise leaves him largely functional." (*Ibid.*)

The Supreme Court also stated the "question whether a defendant has proffered evidence sufficiently substantial to go to the jury under the standard [it] announce[d] today is a question confided to the sound discretion of the trial court." (*Sorden*, *supra*, 36 Cal.4th at p. 73.) The defendant in *Sorden* proffered both lay and expert evidence that supported his defense that his depression affected his ability to remember his duty to register. The Supreme Court concluded the evidence offered did not rise to the level required to negate the element of willfulness, and the trial court did not abuse its discretion when it refused to admit evidence related to the defendant's depression. (*Id.* at pp. 71-74.) The court emphasized that "[o]nly the most disabling of conditions," such as "[s]evere Alzheimer's disease" or "general amnesia induced by severe trauma" would qualify under the standard it announced. (*Id.* at p. 69.)

According to the evidence presented here, defendant knew of his duty to register within five days of a move and of his birthday. He performed both tasks in 2012. True, defendant's friend and son testified he had trouble remembering things, and they clearly believed he suffered impairment, but the trial court concluded defendant coped

with these deficits by eliciting help. And, as Cross conceded, the ability to understand certain obligations and plan for assistance to meet those obligations are not actions consistent with someone having severe cognitive deficit.

As noted, we do not reweigh evidence or the credibility of witnesses. Evidence of defendant's previous registration and regular attendance at required classes and appointments counterbalances his reports of generalized cognitive deficits. At most, the evidence shows defendant's memory loss was intermittent. But an intermittent short-term memory loss is akin to forgetfulness and mere forgetfulness does not excuse compliance with the statutory requirements. (*People v. Barker* (2004) 34 Cal.4th 345, 348, 358-359.)

As *Sorden* specified, to excuse the failure to register, the defendant's mental condition must "nullify[ ] knowledge of one's registration obligations." (*Sorden*, *supra*, 36 Cal.4th at p. 73.) Whatever the extent of defendant's intermittent cognitive deficits, the evidence shows that at times he is completely functional. The trial court concluded that whatever the precise nature of defendant's impairment, it did not meet the strict standard of "the most disabling of conditions." (*Id.* at p. 69.) "It is simply not enough for a defendant to assert a selective impairment that conveniently affects his memory as to registering, but otherwise leaves him largely functional." (*Id.* at p. 72.) As in *Sorden*, the defendant "knew of his obligation to register and, had he taken it to heart, he could have managed to discharge it." (*Id.* at p. 69.) Moreover, under *Sorden*, defendant is required to cope with his intermittent short-term memory loss by taking the necessary measures to remind himself to discharge his legally mandated registration requirement. (*Id.* at p. 72.)

13

## DISPOSITION

The order is affirmed.

THOMPSON, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

IKOLA, J.