Filed 2/22/24 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B324852 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A533690) |
| v. | |
| ARTURO MONTOYA FRANCO, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on January 25, 2024, be modified as follows:

1. At the end of the last paragraph on page 13, after the citation ending "(§ 290.5, subd. (a)(1).)," add as footnote 5 the following footnote, which will require renumbering of all subsequent footnotes:

For the first time in a petition for rehearing, the People seek a remand to conduct a second hearing at which the People would have a further opportunity to "relitigate future dangerousness," including by administering a Static-99 test. We disagree. The question of remedy was encompassed within the question presented on appeal, and the People's decision not to brief that issue does not entitle them to do so now; the merits briefing is the main event, not a dress rehearsal. We also see no reason to grant the People a second bite at the apple by ordering a second hearing: The People had the opportunity to present all evidence regarding defendant's future dangerousness at the first hearing; that the People decided not to do so previously was a tactical decision. The People's citation to *People v. Barragan* (2004) 32 Cal.4th 236 is inapt. *Barragan* held that the People can retry a "strike" allegation after an appellate court reverses a jury's "true" finding for insubstantial evidence. The issue here is different. Here, the trial court did not make a true finding on a sentencing enhancement that we conclude was insufficient. Rather, the People had the opportunity to present evidence and argument as to several statutorily enumerated factors bearing on whether "community safety would be significantly enhanced by requiring continued registration"; the People made the tactical decision to focus on one of those factors and not to present evidence on the others; and we have rejected the legal argument the People made regarding the factor on which it chose to focus. In this scenario, the People are not entitled to a mulligan to present new evidence on the other factors unaffected by our ruling on appeal.

2

\* \* \*

There is no change in the judgment.

Respondent's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

Filed 1/25/24 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B324852 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A533690) |
| v. | |
| ARTURO MONTOYA FRANCO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David C. Brougham, Judge. Reversed.

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Zee Rodriguez, Supervising Deputy

Attorney General, and John Yang, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

A sex offender convicted in the 1980s petitioned the trial court to be removed from California's registry of sex offenders on account of living 37 subsequent years of a law-abiding life. (Pen. Code, § 290, subd. (a)(1).)[1] The People opposed, chiefly on the ground that one of the offender's sex crimes—if prosecuted today under a statute enacted 21 years after his conviction—would render him ineligible to petition for removal from the registry. This case thus presents the question: May a trial court deny a petition seeking removal from the sex offender registry on the ground that the offender's underlying sex crime also constitutes a different, later-enacted sex crime for which lifetime registration is required (and hence removal is not authorized)? We conclude that the answer is "no." Because the trial court otherwise gave the "egregious" nature of the underlying crime controlling weight while giving no weight to the factors bearing on the now-75-year-old offender's current likelihood of reoffending, the court's analysis runs afoul of *People v. Thai* (2023) 90 Cal.App.5th 427 (*Thai*) and must be reversed.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## FACTS AND PROCEDURAL BACKGROUND

### I.  The Underlying Crimes[2]

In the early 1980s, Arturo Franco (defendant) lived with his stepdaughter, J.  In September 1983, when J. was seven years old, defendant pulled her underwear down to her knees and inserted his penis "in [her] hole"; J. reported that "some white stuff came out from [her] cookie and his thing."  In February 1985, defendant rubbed J.'s vagina with his fingers through her underwear.

### II.  Defendant's Plea and Sentence

In the spring of 1985, the People charged defendant with two counts of committing lewd and lascivious acts with a minor (§ 288, subd. (a).)  On May 31, 1985, defendant pled no contest to both counts.  The trial court sentenced defendant to six months in jail, followed by five years of formal probation.  Defendant was also ordered to register as a sex offender for the rest of his life.  In 1989, defendant successfully completed probation.

### III.  Petition For Removal From Sex Offender Registry

On September 9, 2021, defendant filed a petition to terminate the sex offender registration requirement.  Specifically, he alleged that his offenses made him a "Tier 2" offender, that such offenders are eligible for removal after being registrants for 20 years, and that defendant had been a registrant for 37 years.

The People objected to defendant's petition and demanded a hearing.  In a subsequently filed opposition, the People argued that one of the two sex crimes would now be prosecuted as a

---

**2**      These facts are drawn from the victim's statements in police and probation reports, as there was no preliminary hearing and no plea transcript revealing any other factual basis for the convictions.

violation of section 288.7—as having "sexual intercourse" "with a child who is 10 years of age or younger" (§ 288.7, subd. (a))—and that persons convicted under section 288.7 are "Tier 3" offenders who are generally ineligible to be removed from the registry.

Defendant filed a further response with exhibits detailing (1) his unfailing compliance with his sex offender registration requirement as well as lack of any arrests for the intervening 37 years; (2) the progress he made in psychotherapy sessions, completion of a counseling program, and willingness to admit to the crimes and show remorse; (3) his 34-year marriage and family stability; (4) his military service in the 1970s; (5) his post-conviction work history; and (6) his involvement in church activities.

The trial court held a hearing on November 10, 2022. The court described the "two biggest factors" favoring defendant were that he (1) "has no criminal behavior before or after [the 1980s offenses]," and (2) has not reoffended in 37 years. "[E]ven balancing in all the other factors," the court nevertheless found that two factors disfavoring defendant and tied to the underlying crimes—namely, (1) the nature of the crimes, and (2) the age of the victim—were "the focus." The court characterized the first incident as "shocking" and "egregious community threatening behavior" because it entailed "a grown man . . . hav[ing] full on sexual intercourse with his seven-year-old daughter." The court had also observed that this incident would likely qualify for prosecution under section 288.7 were it prosecuted today, and would thereby carry a 25-year-to-life sentence and a lifetime registration requirement. While the court felt that "sending [defendant] back to prison for 25-to-life or more years in prison" was not warranted, "requiring him to continue registering" would

4

"significantly enhance[]" "community safety."  For the same
reason, the trial court also ruled that defendant could not file a
subsequent petition for removal from the registry for the
maximum amount of time—namely, for five years.

## IV.   Appeal

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in (1) denying
his petition for removal from the sex offender registry, and (2)
requiring him to wait five years before filing another petition.[3]

## I.   Pertinent Law

### A.   *Sex offender registration requirement*

California law requires persons convicted of certain sex
crimes or those whose offenses are sexually motivated to register
with California's sex offender registry.  (§ 290, subds. (b) & (c);
*People v. Mosley* (2015) 60 Cal.4th 1044, 1048.)  Due to a
perceived propensity for recidivism, sex offenders are viewed as
posing a """"continuing threat to society."""""  (*People v. Sorden*
(2005) 36 Cal.4th 65, 73.)  The "overriding purpose" of sex
offender management is to mitigate that threat, thereby
"enhanc[ing] community safety by preventing future sexual
victimization."  (§ 9000, subd. (d).)  Requiring sex offenders to
register serves that purpose by ensuring that the offenders are
readily available for police surveillance.  (*Sorden*, at pp. 73-74.)

For many years, California took a one-size-fits-all approach
to sex offender registration:  If registration was required,

---

[3]     Defendant also claims that these errors violated his due
process rights.  Because this due process argument is entirely
derivative of defendant's main arguments, we do not separately
analyze it.

5

registration was always for life.  (Stats. 1947, ch. 1124, § 1, p. 2562.)

Over time, this one-size-fits-all approach led to California having "the largest number of registrants in the nation," "mak[ing] it difficult for law enforcement to effectively supervise those who present[ed] the greatest public danger."  (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 894 (dis. opn. of Werdegar, J.), citing Cal. Sex Offender Management Bd., *A Better Path to Community Safety: Sex Offender Registration in California* (2014) p. 3, and Cal. Sex Offender Management Bd., *Recommendations Report* (Jan. 2010) p. 50.)  In order to reduce the burden on this overwhelmed system and thereby free up law enforcement to supervise the sex offenders who pose the greatest risk to the community (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 384 (2017-2018 Reg. Sess.) as amended Sept. 8, 2017, pp. 12-13), our Legislature amended the sex offender registration statutes in 2017 to create a three-tiered system, with offenders in each tier presumptively obligated to register for different periods of time depending on the degree of risk they pose to the community (Stats. 2017, ch. 541, § 2.5; see § 290, subd. (d)).  The amended scheme sets up the following tiers:

- *Tier 1.*  Tier 1 is for sex offenders posing the least risk of recidivism.  They may apply for removal from the sex offender registry after 10 years.  (§ 290, subd. (d)(1).)
- *Tier 2.*  Tier 2 is for sex offenders posing a medium risk of recidivism.  They may generally apply for removal from the sex offender registry after 20 years (§ 290, subd. (d)(2)), although some Tier 2 offenders may apply for removal after 10 years (§ 290.5, subds. (b)(1) & (b)(2)).

6

- *Tier 3.* Tier 3 is for sex offenders posing the greatest risk of recidivism. They are required to register for life (§ 290, subd. (d)(3)), although there are exceptions under certain circumstances (*id.*, § 290.5, subd. (b)(3)).

Placement into Tier 1 and Tier 2 turns on the crime of which the defendant "was convicted." (§ 290, subds. (d)(1)(A) & (d)(2)(A).) Placement into Tier 3 generally turns on the crime of which the defendant "was convicted," but can also turn on the defendant's "risk level on the static risk assessment instrument for sex offenders (SARATSO)," on his recidivism, or on prior commitment to a state mental hospital as a sexually violent predator. (*Id.*, subd. (d)(3).)

**B.    *Removal from the sex offender registry***

Once a Tier 1 or Tier 2 defendant has been a sex offender registrant for the minimum amount of time mandated by their tier, they may petition to be removed from the registry and for relief from the duty to continue to register. (§ 290.5, subd. (a)(1).) If the defendant does not "meet the statutory requirements" for removal or has not properly served or filed their petition, the trial court may summarily deny the petition after "stat[ing] the reasons" for doing so. (*Id.*, subd. (a)(2).) If the defendant avoids summary denial, the People must elect whether to request a hearing. If the People do not request a hearing, the trial court must grant the petition as long as the defendant is currently registered, has no pending charges, and is not in custody or on parole, probation or supervised release. (*Ibid.*) If the People request a hearing, the court must convene one. (*Id.*, subd. (a)(3).)

The purpose of the hearing is for the People to "present evidence" as to whether "community safety would be significantly enhanced by requiring continued registration." (§ 290.5, subd.

7

(a)(3).) In making this determination, the trial court "shall consider" seven factors: (1) "the nature and facts of the [underlying,] registerable offense"; (2) "the age and number of victims"; (3) "whether any victim was a stranger [to the defendant] at the time of the offense"; (4) "criminal and relevant noncriminal behavior before and after conviction for the [underlying,] registerable offense"; (5) "the time period during which the [defendant] has not reoffended"; (6) "successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program"; and (7) "the [defendant's] current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (§ 290.5, subd. (a)(3).) Permissible evidence includes "declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant." (*Ibid.*)

The trial court's task is to assess whether the People have carried their burden of "produc[ing] evidence establishing that requiring continued registration appreciably increase[s] society's safety." (*Thai, supra*, 90 Cal.App.5th at p. 432.) If the court denies the petition, it must also "set the time period"—between one and five years—"after which the [defendant] can repetition" for relief, and must "state on the record the reason" for the time period it selects. (§ 290.5, subd. (a)(4).)

## II.  Analysis

Defendant argues that the trial court erred in denying his petition for removal from the sex offender registry because the court impermissibly assigned controlling weight to the nature of the underlying sex offenses, and effectively ignored the evidence that overwhelmingly establishes he does not *currently* pose any

8

risk of reoffending.

### A.  *Standard of review*

We evaluate a trial court's decision whether to grant or deny a petition for removal from the sex offender registry for an abuse of discretion, reviewing any subsidiary factual findings based on disputed facts for substantial evidence and any subsidiary legal findings—including questions of statutory construction—de novo.  (*Thai, supra*, 90 Cal.App.5th at p. 433; see generally *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 166; see also *John v. Superior Court* (2016) 63 Cal.4th 91, 95 [statutory construction reviewed de novo].)

Defendant urges that we apply an "independent, de novo" standard of review, and cites *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*) for support.  We reject this argument.

To begin, *Vivar* took pains to explain that "independent review" is *different from* "de novo review" (*Vivar, supra*, 11 Cal.5th at p. 527 [""[i]ndependent review is *not* the equivalent of de novo review""]), so defendant's argument equating the two is faulty right out of the gate.

More to the point, *Vivar* held that appellate courts may use their "independent judgment" when assessing whether deficient advisements of the immigration consequences flowing from a criminal case were "prejudicial" in cases where the sole evidence presented to the trial court was documentary (that is, the "cold record" of the prior proceeding and other documents) rather than live testimony.  (*Vivar, supra*, 11 Cal.5th at pp. 527-528.)  *Vivar* explicitly confined its independent judgment review to the prejudice inquiry under section 1473.7 for motions to vacate convictions because the assessment of prejudice in this context is "predominantly" legal, and hence an assessment appellate courts

9

traditionally review without deference to the trial courts because appellate courts are viewed as equally competent as trial courts at evaluating questions of law. (*Ibid.*; accord, *People v. Werntz* (2023) 90 Cal.App.5th 1093, 1109 (*Werntz*) [so noting].)

Here, by contrast, the question is whether the People have carried their evidentiary burden of establishing that a defendant's "continued registration appreciably increase[s] society's safety" after weighing a variety of statutorily enumerated factors. This is a predominantly factual inquiry and also an inquiry that calls upon the court to balance various factors; evaluating facts and balancing a panoply of factors pulling in different directions are tasks within the particular competence of trial courts because they are tasks trial courts confront on a daily basis while appellate courts do not. (*Vivar*, *supra*, 11 Cal.5th at p. 527 [noting pertinence of the "relative competence of trial courts and appellate courts to assess . . . evidence"].) Even where, as here, the record before the court is purely documentary (and hence "cold"), using an independent—or de novo—standard of review not only ignores the trial court's special competence, but also places upon the appellate courts the additional burden of starting from scratch; indeed, accepting defendant's argument would mean that appellate courts would convert the abuse of discretion review governing most criminal sentences into de novo review because noncapital sentencing hearings also usually turn on balancing a number of competing factors drawn from a cold record of documents. But this is antithetical to our three-tiered system of courts, which is designed to narrow the range of issues each ascending court considers anew; it is meant to be a pyramid—and not, as defendant would have it, a skyscraper. This is undoubtedly why

10

courts have uniformly rejected attempts to decouple *Vivar* from its rationale, and to export its independent judgment standard of review into different contexts. (*People v. Njoku* (2023) 95 Cal.App.5th 27, 43 [declining to impose independent judgment review to resentencing petitions under section 1172.6]; *Werntz*, *supra*, 90 Cal.App.5th at pp. 1109-1110 [same]; *People v. Oliver* (2023) 90 Cal.App.5th 466, 479-480 [same]; *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232-233 [same]; *People v. Mitchell* (2022) 81 Cal.App.5th 575, 590-591 [same]; *People v. Clements* (2022) 75 Cal.App.5th 276, 301 [same].) We respectfully decline defendant's invitation to export *Vivar* into this context.

### B. *"Focus" on the underlying sex offenses*

Citing *Thai*, *supra*, 90 Cal.App.5th 427, defendant argues that the trial court abused its discretion in giving controlling weight to the "egregious" nature of defendant's underlying sexual offenses. In *Thai*, the trial court stated that it had "considered 'each and every one of the factors'" that section 290.5 directs a court to consider, but found that the "egregious" nature of the underlying sex crime (there, masturbating a 12-year-old boy) "weighed" so "heavily" as to warrant denial of the defendant's petition for removal from the sex offender registry despite 24 years of law-abiding behavior since the crime. (*Id.* at pp. 431-432.) On those facts, *Thai* held that "insufficient evidence support[ed] the trial court's conclusion community safety would be appreciably increased by requiring [the defendant in *Thai*] to continue to register for five years" because the People had not "produc[ed] evidence" showing that the 64-year-old defendant "was *currently* likely to reoffend." (*Id.* at p. 433.) The trial court in this case appears to have committed the sin condemned in *Thai*—namely, despite acknowledging other factors, the court

11

gave controlling weight to the "egregious" nature of defendant's offenses despite 37 years of law-abiding behavior since the offenses and despite the People's failure to produce any other evidence indicating that defendant, age 74 at the time of the hearing, "was *currently* likely to reoffend." Indeed, the People on appeal do not really contest that *Thai* mandates reversal.

Instead, the People make the following multi-step argument to circumvent *Thai*: (1) Defendant, for the September 1983 incident, could have been charged—and likely convicted—of violating section 288.7, a statute that was not enacted until 2006 (Stats. 2006, ch. 337, § 9); (2) a defendant convicted of a sex crime under section 288.7 is a Tier 3 sex offender (§ 290, subd. (d)(3)(C)(xiv)); and (3) our Legislature, in designating certain offenses as automatically placing a sex offender into Tier 3, which mandates lifetime registration, has evinced its view that—for those offenses—the nature of the offense *by itself* establishes a perpetual likelihood of reoffending and thus may permissibly be viewed as controlling.

Although this argument is not without some logical gravity, we nevertheless reject it because sections 290 and 290.5 did not adopt this approach. These statutes hinge the designation of tiers (and hence the minimum duration of registration as a sex offender) on whether the defendant "*was* convicted" of certain crimes (§ 290.5, subds. (d)(2) & (d)(3)(C))—not on whether the defendant "*could have been* convicted" of other crimes, including crimes that did not yet exist at the time the sex offense was committed. Our Legislature has, in other contexts, tasked the courts with independently determining whether a criminal defendant previously convicted of a particular crime under a particular theory might still be guilty of the same crime under a

12

different theory or, failing that, guilty of a different crime.  (See, e.g., § 1172.6.)  By explicitly tying tier placement to the offense of which the defendant "was convicted," our Legislature in sections 290 and 290.5 opted not to follow this other approach.  We cannot gainsay our Legislature's choice.[4]  (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 ["the plain meaning of the language governs"]; *People v. Trevino* (2001) 26 Cal.4th 237, 242 [our Legislature's use of "materially different language" in provisions "addressing the same subject or related subjects" is indicative of a different meaning].)

Because we reject the People's attempt to circumnavigate *Thai*, *Thai* governs and mandates reversal due to the trial court's decision to give the "egregious" nature of the offenses controlling weight where the People opted not to introduce any other evidence that defendant "was *currently* likely to reoffend."  (*Thai*, *supra*, 90 Cal.App.5th at p. 433.)  Defendant's convictions are for lewd and lascivious conduct, a violent felony, so he is a Tier 2 offender.  (§ 290.5, subd. (d)(2)(A) [Tier 2 offenders include those convicted of violent felonies]; § 667.5, subd. (c)(6) [violation of section 288 is a "violent felony"].)  Defendant is therefore entitled to be removed from the sex offender registry because he has not reoffended and has been registering for well in excess of the minimum 20 years.  (§ 290.5, subd. (a)(1).)

---

[4]    The Legislature certainly *could* have taken this other approach, even if it would place a defendant in a higher tier affecting the duration of the duty to register, because sex offender registration is not "punitive" and hence does not implicate the right to jury findings beyond a reasonable doubt or the ex post facto clause.  (*People v. Merchand* (2002) 98 Cal.App.4th 1056, 1065; *People v. Castellanos* (1999) 21 Cal.4th 785, 799; *Smith v. Doe* (2003) 538 U.S. 84, 102-106.)

Our decision today does not diminish the egregiousness of defendant's underlying sex offenses or in any way diminish the trauma he inflicted upon J.  Instead, we adhere to our judicial duty of implementing the will of our Legislature as reflected in the statutes it has enacted, and those statutes dictate that defendant is entitled to the relief he seeks.[5]

## DISPOSITION

The order denying defendant's petition is reversed.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

---

[5] In light of this disposition, the question of how long defendant must wait to re-petition for relief is moot.